**Charles NISHI, Plaintiff,**

v.

**MOUNT SNOW, LTD., Defendant.**

**No. 1:95–CV–210.**

United States District Court,
D. Vermont.

Aug. 28, 1996.

McCarty Law Offices, P.C., Brattleboro, VT, for Plaintiff.

David L. Cleary Assoc., Rutland, VT, for Defendant.

## ORDER

GAGLIARDI, Senior District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for summary judgment. For the reasons that follow, the Court grants the motion.

## I. BACKGROUND

Plaintiff brings this action for damages that he allegedly suffered when he had an accident while riding a mountain bike on Defendant's property. The parties have stipulated to a number of factual matters, and the relevant facts are not in dispute.

On June 17, 1994, Plaintiff participated in a mountain bike competition, known as the Mount Snow 1994 Grundig/UCI Mountain Bike World Cup, held at Mount Snow in West Dover, Vermont. After completing his race, Plaintiff had dinner at the Mount Snow Main Lodge. At about 6:00 p.m., Plaintiff rode his bike toward Sundance, a lodge that is lower in elevation than the Main Lodge, because the lower lodge was closer to his parked vehicle. Although Plaintiff claims he did not intend to do so, he took a trail that led him on to part of the race course, which was not in use at the time. As Plaintiff neared the Sundance lodge, he rode into a rope, which "clotheslined" him, causing him to fall backward off his bicycle and to sustain injury.

Plaintiff alleges that Defendant was negligent in failing to prevent Plaintiff's accident by neglecting to better maintain and mark the course trails. Defendant contends that Plaintiff's own negligence caused the accident since Plaintiff should have known not to use the trail he selected and should have avoided riding into the rope that marked off the trail.

## II. DISCUSSION

 Summary judgment is appropriate if the materials before the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact, and, in considering the motion, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

Defendant bases its motion on two releases that it contends bar Plaintiff from maintaining the instant action. Specifically, Defen-

dant relies on a release contained in a membership application to the bicycle association that oversaw the competition, the NORBA release, and a release related to application for the particular competition at Mount Snow, the Mount Snow release.

With respect to the NORBA release, on May 25, 1994, Plaintiff submitted a signed membership application to the National Off Road Bicycle Association ("NORBA"). NORBA membership was a requirement for participation in the competition. The application contained an "Agreement and Release of Liability," which stated, in part:

> I acknowledge that cycling is an inherently dangerous sport in which I participate at my own risk.... In consideration of the agreement of NORBA to issue an amateur license to me, hereby on behalf of myself, my heirs, assignees and personal representatives, I release and forever discharge NORBA and the United States Cycling Federation, its employees, agents, members, sponsors, promoters, and waive and promise not to sue on any claims against any such person or organization, arising directly or indirectly from or attributable to in any legal way any negligence, action or omission to act of any such person or organization in connection with sponsorship, organization or execution of any bicycle racing or sporting event, including travel to and from such an event, in which I may participate as a rider, team member or spectator.

Mount Snow was a member of NORBA and a promoter of the event.

The Mount Snow release, the second release on which Defendant bases its motion is associated with registration for the competition. To enter the competition, Plaintiff completed an official entry form. The entry form did not contain a release, but included a statement that participants could not compete without signing a release and that each participant would sign an "Entry and Release of Liability Form" before competing. Plaintiff cannot remember whether he signed the Mount Snow release at the time he registered, and Defendant has not been able to produce such a release signed by Plaintiff. Defendant contends that the Court should

consider the Mount Snow release as part of the registration agreement and, therefore, hold that it is binding on Plaintiff.

As the Court finds that the NORBA release precludes Plaintiff's claim, the Court need not consider the applicability of the Mount Snow release or the issues the parties raise with respect to it.

Plaintiff presents two separate grounds for arguing that the NORBA release does not bar his claims: (1) the release is unenforceable because it is vague and ambiguous, and, at the time of the accident, he was not participating in a race; and (2) the release is void and unenforceable because it violates public policy.

■ Exculpatory agreements are construed strictly against the party that relies on them. *Colgan v. Agway, Inc.,* 150 Vt. 373, 375, 553 A.2d 143, 145 (1988). Therefore, "contractual language disclaiming tort liability [must] be clear enough that the intent of both parties to relieve the defendant of the claimed liability [is] unmistakable." *Id.*

■ Plaintiff contends that the NORBA release was not sufficiently clear to relieve Defendant of liability and that, even if the release may relieve Defendant of liability in some circumstances, it should not apply to Plaintiff because he was not competing in a race at the time of the accident.

The Court disagrees. The release's statement that it waives any "claim[ ] ... arising directly or indirectly from or attributable to in any legal way to any negligence, action or omission to act of any ... person or organization in connection with sponsorship, organization or execution of any bicycle racing or sporting event" is unambiguous. The release clearly waives liability from the type of negligence claim Plaintiff brings against Defendant.

The release further states that it extends to "travel to and from ... an event." At the time of the accident, Plaintiff was biking from the Main Lodge to Sundance Lodge, because the latter location was closer to his parked vehicle. In other words, Plaintiff was travelling from the site of the competition to another location. Consequently, Plaintiff's

argument that the release does not apply because he was not participating in a race when he sustained his injuries is unavailing.

██ Plaintiff's second argument against the applicability of the release is that it is void as against public policy. Even if the language in an exculpatory agreement is clear, the agreement may be unenforceable if it violates public policy. *Dalury v. S–K–I, Ltd.,* —— Vt. ——, 670 A.2d 795, 797 (1995).

The Court does not agree with Plaintiff's contention that the NORBA release violates public policy. In a recent, unpublished opinion, the Vermont Supreme Court upheld the applicability of an exculpatory agreement in circumstances similar to those here. *Kerr v. Victor Monte & Breakaway Promotions,* 163 Vt. 651, 655 A.2d 735 (1995). In *Kerr,* the plaintiff had been injured while participating in a cycling race known as the 1990 Killington Stage Race when a vehicle crossed from the adjacent traffic lane into the racing lane. The trial court granted summary judgment for the defendant Breakaway Promotions, which had organized the race, based on an exculpatory agreement the plaintiff executed in which he agreed to "fully assume the risks associated with … participation including, … the dangers of collision with pedestrians, vehicles, other racers, and fixed or moving objects." *Id.* The Vermont Supreme Court affirmed, finding no ambiguity in the agreement. This Court finds that the facts of the instant case are similar to the facts in *Kerr* and reaches the same result.

Plaintiff seeks to distinguish *Kerr,* noting that the release in that case specifically identified the type of accident that the plaintiff suffered, namely, collision with a vehicle. But the relevant inquiry is whether the release is sufficiently clear. As noted, the Court finds that the NORBA release indicates clearly that it shields Defendant from liability, and that it applies to the type of activity in which Plaintiff was engaged, specifically, travel from the event.

Plaintiff also argues that the instant case is governed by *Dalury,* 670 A.2d 795, a case that the Vermont Supreme Court decided seven months after *Kerr.* In *Dalury,* the plaintiff was injured while skiing at a resort that the defendant operated. The trial court granted summary judgment for the defendant on the basis of a release the plaintiff signed in connection with his purchase of a midweek season pass. The release applied to all liability resulting from negligence. The Vermont Supreme Court reversed, holding that the release was unenforceable because it violated public policy.

This Court, however, does not find *Dalury* controlling. *Dalury* involved a release that a ski resort required of all skiers, recreational or otherwise, who used its facilities. During the appropriate season, the ski resort operates on a daily basis and offers its services broadly to the public in exchange for the purchase of a ticket and the signing of a release. In the case at bar, by contrast, Plaintiff entered a discrete racing competition held over a period of three days, open only to members of the NORBA mountain bike association, who specifically registered for the race and signed a release acknowledging the heightened dangers of competition. In light of these distinctions and the Vermont Supreme Court's decision in *Kerr,* handed down within a year of *Dalury,* this Court rejects Plaintiff's argument that *Dalury* governs the instant case. This case is more similar to *Kerr* than *Dalury,* and the Court finds the NORBA release binding on Plaintiff.

## III. CONCLUSION

The uncontested facts permit the Court to rule as a matter of law that the NORBA release constitutes a binding exculpatory agreement that precludes Plaintiff from maintaining the instant action. Accordingly, the Court grants Defendant's motion for summary judgment.

So Ordered.